CONSUMERS COAL COMPANY, 1220 Winters Bank Tower, Dayton, Ohio 45423, Plaintiff,

v.

PELLET COAL EXPORT COMPANY INC., 439 Main Street, Carrollton, Ky. 41008, Defendant.

In the Matter of CONSUMERS COAL COMPANY, Debtor.

Bankruptcy No. 3–79–550.
Adv. No. 3–81–0305.

United States Bankruptcy Court,
S. D. Ohio, W. D.

Aug. 31, 1981.

Frank Root, Roy H. Horn, Paul E. Zimmer, Dayton, Ohio, for plaintiff.

Douglas G. Cole, Cincinnati, Ohio, for Cinti Gas & Elec. Co.

Robert J. Egan, New York City, for plaintiffs David W. Dukhouse and Frederick J. Baumann.

Stanley N. Billingsley, Carrollton, Ky., Paul D. Rice, Cincinnati, Ohio, for defendant.

## DECISION AND ORDER

ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

An involuntary petition in bankruptcy was filed on 19 January 1979 by Cincinnati Gas & Electric Company against Consumers Coal Company, a Kentucky Corporation, in the Eastern District of Kentucky; and transferred to the Southern District of Ohio on 6 April 1979 for trial and administration.

On 24 July 1979 pursuant to a Decision and Order, an adjudication in bankruptcy was entered.

On 3 August 1979 a petition was filed under Chapter XI of the Bankruptcy Act, and the Debtor in Possession authorized to continue operation of the business.

A plan of arrangement was duly filed by Debtor on 23 May 1980. The hearing on confirmation and objections filed in opposition thereto was continued, because of ancillary litigation. No continued hearing on the Plan of Arrangement was assigned; and, on 3 August 1981 an Amended Plan of Arrangement was filed which was set for hearing on 30 September 1981. The last date for objections to confirmation has been set as 20 September 1981.

On 8 May 1981 Plaintiff (Consumers) filed a complaint against Pellet Coal Export Company, Inc. (Pellet) for temporary, preliminary, and permanent injunctions restraining Pellet from any contact or communication with National Bank of Detroit relating to the affairs of Debtor and restraining Pellet from unlawfully interfering with Debtor's attempt to effect a Plan of Arrangements, and from initiating any legal proceedings in any other court. Plaintiff also sought an order "restraining defendant from any contact or communication with any of plaintiff's creditors."

A temporary Restraining Order was issued on 11 May 1981.

The action is before the court upon the pleadings; a pretrial order finalized on 15 June 1981; the evidence adduced at a trial on 16 June 1981; and Plaintiff's Post-Trial Brief filed 27 July 1981. Defendant has not filed a Post-Trial Brief.

### FINDINGS OF FACT

On 20 March 1981, Consumers and Pellet entered into a contract, herein termed the "Pellet Sale Agreement," including the accompanying Addendum, for the sale of all of Plaintiff's assets to Defendant.

"B. *CONDITIONS.*

1. This Agreement is subject to (i) approval by the federal bankruptcy judge having jurisdiction over Seller and (ii) such approval by the Board of Directors and Shareholders of Seller and Purchaser as may be required by law, provided, however, that if said Agreement and this Addendum is not approved by the Board of Directors and Shareholders of both parties within 30 days from the date of

said Agreement and this Addendum, then both said Agreement and this Addendum shall be null and void."

On 27 March 1981 Consumers and its major shareholders entered into an Agreement of Compromise and Settlement, resolving a series of ongoing disputes which had jeopardized efforts to seek confirmation of a plan of arrangement. By order under date of 22 May 1981, this Court approved the Shareholder Settlement Agreement to resolve the interference with the Chapter XI process (now pending on Appeal).

The first modification of the Settlement Agreement was executed between May 1 and May 5, 1981. Prior to modification, the Agreement provided for sale by Consumers of all its assets to any purchaser who submitted an offer which complied with certain prerequisites, including the following:

(a) The offer had to be accompanied by a $300,000 down payment or a bank escrow deposit aggregating the cash portion of the purchase price.

(b) The price (and therefore the bank escrow deposit) had to be at least $15.5 million cash, net of commission, plus indebtedness due A&T Mfg. Co.

(c) The offer had to provide (if it were received and negotiated by Richard E. Hodson) that the purchaser would cause to be paid to Donald C. Graves and Gaylord S. Stacy the sum of $2,749,495.95 out of the purchase price proceeds.

(d) The purchaser had to provide written releases, in favor of plaintiff; Messrs. Hodson, Graves, Stacy and H. T. Mead; Mead Development Co; and Mead-Hodson, Inc., releasing them from any post-closing obligation or liability of any kind to the purchaser or the companies the purchaser was acquiring.

(e) The purchase price could not be subject to offset or reduction.

(f) The offer had to provide that its consummation was conditioned upon the Shareholder Settlement Agreement being approved by a final order of this Court entered on or before June 1, 1981.

(g) The offer had to provide that the *"effectiveness* and consummation thereof are in all respects subject to the approval of the Court ...."* (emphasis added)

The Pellet Sale Agreement did not comply with the following provisions of Article 6, to-wit:

(a) The requirement of a cash deposit or bank escrow or any demonstration whatever of any ability or means to make timely such a deposit.

(b) The requirement of express provision for payment of more than $2.5 million to Messrs. Graves and Stacy.

(c) The requirement of provision for written releases in favor of plaintiff and the other signatories to the Shareholder Settlement Agreement.

(d) The express detailed provisions pertaining to Court approvals.

(e) Defendant did not execute or return to plaintiff a rider sent to defendant with plaintiff's counsel's letter of April 8, 1981. This letter advised defendant that such rider to the Pellet Sale Agreement was necessary in order for there to be a Complying Offer under the Shareholder Settlement Agreement—in other words, for the Pellet Sale Agreement to be approved by Pellet's shareholders. Defendant viewed this rider and the Complying Offer provisions of the Stockholder Settlement Agreement as an attempt by plaintiff's shareholders to renegotiate the Pellet Sale Agreement.

(f) The basis for defendant's conclusion that the Pellet Sale Agreement was approved by plaintiff's shareholders is Article 6 of the Shareholder Settlement Agreement and Mr. Hodson's assurance that the Shareholder Settlement Agreement was signed by the signatories thereto.

(g) Court approval of the Pellet Sale Agreement did not occur.

On 5 May 1981 Pellet sent a mailgram to National Bank of Detroit (NBD) threatening to file a $100,000,000.00 damage suit against Consumers because its officers and shareholders "refuse to honor their agreement" and that "this action will be filed the week of May 11." NBD is the major creditor of Consumers and the confirmation of a plan of arrangement is in great part dependent upon its cooperation in restructuring loan agreements and advancing additional funds.

## DECISION

This litigation is primarily a question of fact. The Plaintiff has studiously labored at great length the terms of the contract at issue and the fact that numerous conditions precedent had not been met by Pellet. It, also, is noteworthy that adequate payment was never timely tendered to Consumers by Pellet.

There is no doubt from the facts that there was never a consummated mutual agreement. This Court, nevertheless, does not even reach the issues raised as to the terms of the alleged sale agreement.

The issues may be resolved upon more fundamental principles.

Even if the agreement had not specifically provided that it is "subject to (i) approved by the federal bankruptcy judge having jurisdiction over" Consumers, the court jurisdiction could not be obviated or avoided. In fact, Court approval has never even been sought. The Debtor in Possession determined that the sale is not in the best interest of the Creditors, and could not and did not ever recommend approval by the Court.

Furthermore, assuming that the question of approval had been duly submitted to this Court, a meticulous search of the entire record has revealed that there is such a complete lack of the elements of mutuality for a binding contract that the correspondence with the National Bank of Detroit, threatening a $100,000,000.00 damage suit, can only be attributed as a malicious intent, in light of the Bankruptcy Court exclusive jurisdiction over both the Debtor and all of the assets. This blatant disregard of all legal principles is augmented by the fact that Defendant never even bothered to file a post-trial brief to assist the Court in reaching any other conclusion, or of mitigating the damages so inflicted.

Such blatant abuse of the judicial process and malicious interference in the Chapter XI case not only has delayed the rights and realization of payments to all of the creditors involved in the case; but also, it has imposed an unnecessary burden of litigation expenses, including attorneys' fees, which bear a priority as administrative expenses over the rights of the estate creditors.

*ORDERED, ADJUDGED AND DECREED,*

(1) that no contractual relationship whatever exists between Consumers Coal Company and Defendant Pellet Coal Export Company, Inc.

(2) That Defendant is neither a creditor nor an interested party in the Chapter XI case and is permanently enjoined from any contact or communications with any creditors and interested parties of Consumers Coal Company, including National Bank of Detroit, and from any other attempts to interfere with the Chapter XI process and jurisdiction of this Court.

(3) That an evidentiary hearing be set for the purpose of the submission of evidence as to the costs of this action incurred by Plaintiff, including reasonable attorneys' fees, conformably to *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702; *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141; *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522; *Monroe v. Board of Commissioners*, 453 F.2d 259 (6th Cir.), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2045, 32 L.Ed.2d 333; *Bradley v. Richmond School Board*, 416 U.S. 691, 696, 94 S.Ct. 2006, 40 L.Ed.2d 476; and *Huecker v. Milburn*, 538 F.2d 1241 (6th Cir.).